HAROLD A. HOBSON, JR. and JOAN E. HOBSON, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent HOBSON v. COMMISSIONER
Docket Nos. 4560-76, 3086-77, 3087-77.
United States Tax Court
T.C. Memo 1980-132; 1980 Tax Ct. Memo LEXIS 460; 40 T.C.M. (CCH) 221; T.C.M. (RIA) 80132; April 21, 1980, Filed Harold A. Hobson, Jr., pro se. Roger D. Osburn, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in the income taxes of petitioners Harold A. Hobson, Jr. and Joan E. Hobson for the calendar years *461 1972 and 1973 in the amounts of $14,433.89 and $11,021.32, respectively, and an addition to tax under section 6653(a), I.R.C. 1954, [2] for the calendar year 1973 in the amount of $551.07. Respondent determined a deficiency in the income tax of H. A. Hobson, Jr. and Associates, Inc.for the taxable period July 26, 1973, through December 31, 1973, in the amount of $17,365.02 and an addition to tax under section 6653(a) in the amount of $868.25. Some of the numerous issues of substantiation raised in the case have been conceded by respondent and certain other issues disposed of by agreement of the parties, leaving for our decision the following: (1) Whether petitioners Harold A. Hobson, Jr. and Joan E. Hobson are entitled to numerous claimed business expense and itemized deductions for the years 1972and 1973 in excess of the amounts conceded by respondent at the trial or on brief. [3]
*462 (2) Whether petitioners in 1972 are entitled to a business bad debt deduction of $20,000 because of the worthlessness of a loan made by Mr. Hobson and, if not, did the debt become worthless in 1972 so that petitioners would be entitled to a nonbusiness bad debt deduction in accordance with the provisions of section 166(d); (3) Whether petitioners are entitled to deduct a partnership loss to the extent that loss exceeds Mr. Hobson's capital account in the partnership in which he was a limited partner;
(4) Whether the corporate petitioner, Harold A. Hobson, Jr. and Associates, Inc. is entitled to deductions for the year 1973 in excess of the amounts conceded by respondent; and
(5) Whether petitioners Harold A. Hobson, Jr. and Joan E.Hobson and petitioner Harold A. Hobson, Jr. and Associates,Inc. are each liable for additions to tax under section 6653(a) for the year 1973. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Harold A. Hobson, Jr. and Joan E. Hobson, petitioners in two of these consolidated cases, are husband and wife who resided in Maitland, Florida, at the time of the filing of their petitions in this case. Mr. and Mrs. Hobson *463 filed joint Federal income tax returns for the calendar years 1972 and 1973 with the Office of the Director, Internal Revenue Service Center, Kansas City, Missouri. Harold A. Hobson, Jr. and Associates, Inc., petitioner in one of these consolidated cases, is a dissolved Illinois corporation which had its principal place of agency in Maitland, Florida, at the time the petition in this case was filed. It filed a corporate income tax return for the calendar year 1973 showing its date of incorporation as July 26, 1973, with the Office of the Director, Internal Revenue Service, Kansas City, Missouri. During the years here in issue, Harold A. Hobson, Jr. (petitioner) was a securities salesman engaged in activities such a putting limited partnership programs together for investors, including real estate programs. Petitioner referred to his securities sales as sales of "tax shelters." He sold securities through brokers as well as directly to customers. The following schedule shows the amounts claimed by petitioner on his 1972 Federal income tax return for the items indicated, the amounts disallowed in the notice of deficiency, the amounts now conceded by respondent to be deductible, *464 and the amounts still in issue: Disallowed
Additional
in
Amount
Claimed
Deficiency
Now Conceded
Still
on Return
Notice
by Respondent
in Issue
Employee expense
paid to attorney
$5,000.00
$5,000.00
$5,000.00
$0
Accounting and legal
1,600.00
1,600.00
0
1,600.00
Books and magazines
420.00
41.00
0
41.00
Supplies
875.00
164.00
0
164.00
Depreciation
8,250.00
4,812.50
0
0 *
Sales tax on mobile
home
1,000.00
188.20
44.61
143.59
The following schedule shows the amounts claimed as deductions by petitioner on his 1973 Federal income tax return for the items indicated all of which were disallowed in the notice of deficiency, the amounts now conceded by respondent to be deductible, and the amounts still in issue: Claimed
Now Conceded
Still
on Return
by Respondent
in Issue
Meetings
$ 105.00
$ 105.00
0
Car rental
140.00
140.00
0
Taxi and buses
140.00
140.00
0
Tips
700.00
700.00
0
Travel expense
1,260.00
1,260.00
0
Entertainment
840.00
840.00
0
Depreciation on
motor home
2,450.00
3,809.89
0 *
Parking fee and
tolls
350.00
350.00
0
Miscellaneous
140.00
140.00
0
Auto repair and
maintenance
54.00
54.00
0
Auto leasing
945.00
945.00
0
Bank charges
105.00
94.50
0 **
Telephone
1,400.00
1,050.02
$ 349.98
Office rent
2,100.00
1,800.00
300.00
Postage
140.00
103.12
36.88
Printing
210.00
89.20
120.80
Supplies
385.00
424.34
0 *
Gifts to customers
500.00
0
500.00
Subscriptions
210.00
70.34
139.66
Legal and accounting
1,400.00
250.00
1,150.00
Insurance
1,021.00
0
1,021.00
Dues
75.00
24.00
51.00
Motor home repair
336.00
593.41
0 *
Gas and oil
1,200.00
0
1,200.00
Medical
150.00
0
150.00
Taxes
2,971.00
2,971.00
0
Interest
8,742.00
7,119.00
1,623.00
Contributions
170.00
120.00
50.00
*465 During the years 1972 and 1973 petitioner in connection with his work as a securities salesman purchased magazines that contained articles which he considered to be helpful in influencing his clients to purchase securities he was promoting. Petitioner would stop at a newsstand and buy such a magazine for cash either to show to several customers or to give to a certain customer. Petitioner usually got some form of receipt with the purchase of the magazine at a magazine stand or in a store, but at the trial he had none of these receipts available. His purchases of magazines were generally for cash. Petitioner included in his claimed deduction in 1972 for supplies such items as transparencies used in promoting sales as well as office supplies. He at one time had some receipts for some of these purchases, but had none available at the trial of this case. Petitioner in 1972 bought a television and a stereo for the motor home which he purchased in 1972 and in addition bought such things as pots and pans and other miscellaneous items for the *466 motor home. He had available at the trial no receipts showing the cost or the amount of sales tax paid with respect to many of these miscellaneous items he purchased. For the period beginning February 19, 1973, through June 19, 1973, petitioner received bills from the telephone company for monthly service and long distance calls totaling $1,154.27. Ofthis amount, $10 per month, or $50, represented the service charge for local personal telephone service and $54.25 was for personal long-distance calls. Petitioner had checks showing payment of the February, April, May, and June telephone bills. Petitioner did pay the March bill and he also had a telephone bill for the month of January, but the amount of that bill or the date of its payment is not shown in the record. In addition to the telephone calls petitioner made from his home, he would make calls from pay stations when he was traveling. When he would arrive in a town he would immediately begin to call brokers and prospective customers. Usually he would obtain a large quantity of dimes and go to a telephone booth to make these calls. On some days petitioner would make 20 to 30 such 10-cent calls, and on other days less. The *467 cost of such local telephone calls to petitioner averaged from $5 to $10 a week for the weeks he was traveling in connection with his business. During 1973, petitioner rented an office for business use from a Mr. Sidney Novit at a cost of $400 a month. He started using that office sometime in January 1973 and used it in his personal business until he incorporated his business. After petitioner's business was incorporated on July 26, 1973, under the name Harold A. Hobson, Jr. and Associates, Inc., the corporation used a room in petitioner's home as its office. Petitioner had checks dated in February, March, and April for $400 each. He had a check dated in June for $600. Petitioner paid rent to Mr. Novit for the entire period from mid-January to late July1973, but was unable to locate all his checks for rental payments. Petitioner in 1973, in connection with his business, very often had reprints made of newspaper or magazine articles which he mailed to various brokers. He would at times purchase stamps for use in his office. However, much of petitioner's time was spent in traveling and he very often would purchase stamps in post offices in various cities and mail material *468 to various brokers from those cities. Petitioner had receipts for $103.12 for postage. Often when he was purchasing stamps when he was away from home he would purchase $1 to $3 worth at a post office, or perhaps obtain them from a motel machine and therefore would get no receipt for the purchase. The cash spent in this manner in 1973 by petitioner for stamps was at least $37. Petitioner had receipts from several printers totaling $89.20. All of these receipts except one were for instant printing of items which petitioner had run off while he waited in order that he could immediately mail the copies to various customers. One of petitioner's printing receipts was for prints made from transparencies. In addition to the instant reprints of items, in 1973 petitioner had letterhead stationery and envelopes run off by a printer in Milwaukee.He also had printing of business cards done by this printer. When he began to use Sidney Novit's office in 1973 it was necessary for him to have new stationery and envelopes printed. During 1973 petitioner purchased various items for gifts to customers. Petitioner decided to have small tie tacks which cost approximately 50 cents apiece made *469 with the letters "IDEAL" on them. His idea was that the "I" stood for income, "D" stood for diversification, "E" stood for equity build-up, "A" for appreciation, and "L" for leverage. He paid $246 for 492 of these tie tacks and the model for the tie tacks cost $35, the sample $10mold, and the production mold $10, resulting in a total cost of $301 for the 492 tie tacks. Petitioner would pass these tie tacks out to various brokers and other people with whom he dealt with the idea that when somebody commented on the "IDEAL" on the tie tack it would call his business to the attention of the broker or customer. In 1973 petitioner purchased $565.80 worth of liquor to give as gifts to various people and to use for entertaining in his motor home. Petitioner also paid $126.40 to the University Club in 1973 for use of a room for entertaining prospective customers and brokers. He purchased flowers at a cost of $57.60 for various clients. Petitioner had either checks or receipts showing subscriptions to various business periodicals in 1973 in an amount totaling $70.34. The only check or receipt petitioner had for legal or accounting services in 1973 was a $250 check to Mel Keel. Petitioner *470 had no receipt showing payment of insurance. However, there were receipts of the corporation showing insurance payments on the motor home and certain other insurance payments in August of 1973. The only receipt petitioner had for dues paid in 1973 was $24 paid to the Chicago Motor Club. Petitioner in 1973 belonged to a Security Dealers Association known as the LaSalle Street Barn Club. He paid dues to this organization of approximately $50 in1973. In 1973 petitioner had checks to the Standard Oil Company totaling $217.58. These checks were in payment for gasoline and oil for petitioner's business automobile which he leased and for the motor home. Petitioner had receipts from American Express for 1973 for gasoline purchases totaling $300.40. Petitioner only used his American Express card for gasoline purchases which were for business use. Petitioner also had two checks, one for $6.50 and one for $7.47, made to "Western" which was a filling station in Wisconsin where he purchased gas for business purposes. The total amount of $531.95 of checks or receipts for gasoline purchases which petitioner had available at the trial represented gasoline purchased for business use. Petitioner's *471 wife purchased gasoline for her car at a filling station other than the Standard Oil Company and did not charge any gasoline to petitioner's American Express card. Petitioner did not use his leased business automobile for personal travel. He made no personal use of the motor home. The $531.95 for which petitioner had American Express invoices for gasoline or checks to oil companies was paid for gasoline used in his business. During 1973 petitioner had a major medical insurance policy covering himself, his wife, and his two children. This major medical policy was handled through an insurance agent who also handled other forms of insurance for petitioner. The amount of insurance premiums paid by petitioner to the insurance agent in 1973 which was allocable to his major medical policy was in excess of $300. In addition to the home mortgage interest and interest to the Exchange Bank which respondent has conceded to be deductible by petitioner in 1973 and the $758 of interest to the Harris Trust and Savings Bank which respondent has conceded to be deductible, petitioner also paid interest to the First National Bank and Trust Company of Barrington with respect to a loan for purchase *472 of the Apollo motor home and a loan for the purchase of his wife's car. The installment note which petitioner signed with respect to the Apollo motor home was in the face amount of $15,390. The date of the installment note was August 5, 1972, and the maturity date was August 15, 1976. The note provided for48 monthly payments of $321 each and a final payment of $303, the first payment to be made September 15, 1972. Under the disclosure statement the note showed the proceeds of the loan to be $12,825, and the finance charge to be $2,565, making a total of $15,390. The interest on the note was shown to be at an annual percentage rate of 9.24. During 1973 petitioner personally made the $321 monthly payments through July 15, 1973, and thereafter the motor home was transferred to the corporation which took over the payments of the installment note. During the entire year 1973 petitioner paid $113.60 each month on a discounted installment note which he had executed for the purchase of his wife's automobile. Thesepayments were also made to the First National Bank and Trust Company of Barrington, Illinois. The $113.60 included both the principal and interest payment on the installment *473 note to the bank in Barrington. In 1973 petitioner paid $20 for an American express card which he used over 99 percent for business purposes. Petitioner also had a Bankamericard on which he incurred finance charges each month. These were generally in the amount of $11.77 a month. Petitioner also had some revolving charge accounts with stores, one being with Sears Roebuck on which he incurred some finance charges. Out of the $170 contributions petitioner claimed to be deductible, the amount of $120 was for contributions by check to certain charitable organizations. The remaining $50 was petitioner's estimate of the cash contributions he made to various charitable organizations when he was approached by members of those organizations asking for a contribution. The only specific organization to which he remembered making a cash contribution was the Boy Scouts. However, he did make other contributions of small amounts. In August 1972 petitioner lent Mr. John Larusso $20,000. The first loan on August 14, 1972, was advanced by a check for $10,000 dated on that day, and the second loan was by a $10,000 check dated August 31, 1972. Mr. Larusso was the husband of petitioner's *474 secretary and petitioner's loan to Mr. Larusso was a personal and not a business loan. When the final advance of $10,000was made by petitioner to Mr. Larusso on August 31, 1972, Mr.Larusso told petitioner that he would repay him within a month. Mr. Larusso was a salesman of used cars. Mr. Larussocontinued to be a salesman of used cars throughout 1972 and1973 and in subsequent years. When Mr. Larusso did not repay petitioner in late September or early October, petitioner made several calls to Mr. Larusso who told him that he was not able to repay him right at the time but would repay him when he was able. Petitioner did not tell his secretary, Mrs. Larusso, about having made the loans to her husband. However, he did continue to call Mr.Larusso with respect to repaying the loans throughout 1972 and also in the year 1973. At the time of the trial petitioner had not collected any of the $20,000 loaned to Mr. Larusso, but had taken no action in an effort to collect other than telephone calls to Mr. Larusso. In 1972 petitioner was a limited partner in Western Beef Cattle Fund. His basis in his interest in the partnership shown by the partnership as his capital account in 1972 *475 was $3,000. Petitioner's proportionate share of the losses of the Western Beef Cattle Fund partnership in 1972 was $4,385.22. In a statement furnished to petitioner by the Western Beef Cattle Fund partnership, petitioner's capital account balance at the end of 1972 was shown as a negative figure of $1,385.22. During the year 1973 petitioner's proportionate share of the losses from the partnership, Western BeefCattle Fund, was $265. Petitioner made no further contribution or payment of capital to Western Beef Cattle Fund in the year 1973. On its 1973 corporate Federal income tax return Harold A. Hobson, Jr. and Associates, Inc. claimed a depreciation deduction of $2,200 which was disallowed in full in the notice of deficiency. At the trial respondent conceded that the corporation was entitled to a depreciation deduction of $2,721.36. On its return the corporation claimed $41,007 as business expense deductions and a deduction of $5,000 for payment to a Pension Plan. Respondent in the notice of deficiency disallowed the entire amount of business expense deductions claimed by the corporation and the Pension Plandeduction claimed. The following schedule shows the amount of each *476 business expense deduction claimed by petitioner, the amount now conceded by respondent to be properly deductible, and the amount of such claimed business expenses deductions still in dispute: Claimed
Now Conceded
Still
on Return
by Respondent
in Issue
Compensation to officer
$20,000.00
$20,000.00
0
Rent
1,500.00
133.50
$1,366.50
Other: Telephone
2,800.00
1,236.60
1,563.40
Postage
250.00
185.50
64.50
Printing
150.00
150.00
0
Supplies
275.00
139.20
135.80
Gifts
800.00
0
800.00
Subscriptions
150.00
15.00
135.00
Legal and accounting
1,000.00
0
1,000.00
Meetings
75.00
86.50
0 *
Car rental
100.00
112.48
0 *
Bank charges
75.00
0
75.00
Tips
500.00
0
500.00
Promotion expense
3,860.00
574.92
3,285.08
Auto lease
760.00
675.00
0 **
Insurance
740.00
613.00
127.00
Multivest
226.00
226.00
0
Travel expense
3,500.00
989.41
2,510.59
Entertainment
1,000.00
71.41
928.59
Dues
75.00
75.00
0
Taxis and buses
100.00
0
100.00
Auto repair and
maintenance
89.00
0
89.00
Motor home repair and
maintenance
1,967.00
21.45
1,945.55
Gas and oil
665.00
0
665.00
Miscellaneous
100.00
55.00
45.00
Park and tolls
250.00
50.23
199.77
Pension plan
5,000.00
0
5,000.00
*477 Petitioner paid approximately $70,000 for his home when he purchased it, of which $10,000 represented the cost of the land. Petitioner's entire home consisted of approximately 3,000 square feet and he used one room which contained approximately 300 square feet for a corporate office. The corporation actually made no payment of rent to petitioner. Petitioner had office furnishings in the room used for the corporate office which consisted of carpeting, a desk and certain other items. The following schedule shows the amount of the invoices for telephone service in petitioner's home, the date of the invoices, and the date of the corporate checks in payment thereof: Invoice
Check Amount
Date
Date
$ 211.64
7/19/73
8/10/73
183.46
8/19/73
8/31/73
266.73
9/19/73
10/1/73
190.70
10/19/73
10/23/73
201.15
11/19/73
11/30/73
287.17
12/19/73
12/29/73
The invoices and checks totaled $1,340.85. Of this amount, $60 represented personal local telephone service for petitioner and $44.25 represented personal long *478 distance calls. Petitioner, as an officer of the corporation, operated the business as he had operated it when it was his individual business. He continued to make telephone calls at pay stations when he was out of town in connection with the corporate business and the cost of these calls on a weekly basis was approximately the same as when he was operating as an individual. Petitioner also continued as he had when he was operating the business as an individual to buy postage stamps when he was out of town to mail items to various brokers and other persons he had contacted. He also continued to buy magazines and have reprints of articles made or give the magazines to clients as he had when he operated as an individual.
During 1973 corporate checks or charges were made for items designated "Zimmerman's (liquor), Holiday Gifts, Swing Door, Parkway Floral Shop, J. J.'s Embassey Ltd." totaling $382.28. The liquor purchased was used to serve drinks to various clients or to give to clients; the flowers were sent to a client's funeral. Some of the amounts represented payments to bars for drinks for clients. During 1973 the corporation drew a check for $100 dated November 1, 1973, to *479 John Noble and Associates, a check for $200 dated August 20, 1973, to Sidney Novit, a check for $300 dated August 20, 1973, to Mel Keel, and a $250 check, date unknown, to Sidney Novit.The checks to Mel Keel and Sidney Novit were primarily in connection with the incorporation of Harold A. Hobson, Jr. and Associates, Inc. The amount paid to John Noble and Associates was for bookkeeping for the corporation. Petitioner in late 197o was requested by a good client of the corporation to pay $2,000 for a contest for the client's salesmen. Petitioner did not know exactly what the nature of the contest was. He was informed that the payment was expected of him if the corporation expected to keep the client's business. Petitioner had prepared a plan with respect to a meeting with the salesman of this client showing the names of 36 individual salesmen whom he planned to have at a meeting to promote the sale of securities. The estimated expenses aside from travel, shown for the 36 people attending the meeting was $2,385 which petitioner had intended to have the corporation pay. However, at the insistence of his client the corporation paid the client $2,000 in cash for a contest among the *480 client's salesmen, rather than expending the amount for the meeting. Towards the end of the trial petitioner offered in evidence a group of receipts of the corporation relating to his travel for the corporation and to entertainment expenses. These receipts show the place and date of the expenditure, the type of expenditure such as air fare or hotel room or food. However, none of the receipts show the name of any person entertained, whether any business was discussed or the purpose of the entertainment. In addition to the $21.45 of repairs deduction conceded by respondent, the corporation drew a check dated September 16, 1973, to Sochmandy Dodge in the amount of $1,200 and a check dated September 21, 1973, for $400.91 to this same payee. The $1,200 payment and $400the.91 payment were made with respect to rebuilding of the motor on the motor home and repairing a dent which repairs had been necessitated because of damage to the motor home when it was loaned to a client. During 1973 the corporation drew checks to Standard Oil Company for $241.60 for gasoline and had credit card statements for $341.51 for gasoline. Petitioner's wife bought her gasoline generally for cash at *481 a station other than a Standard Oil Company station. The gasoline purchased by the checks and credit cards was used by petitioner for business purposes. When petitioner would fly into a town on business for the corporation rather than drive, he would very often take taxis or buses to the locations he visited. He also at times used cabs and buses on corporate business when he was not out of town. Petitioner had no corporate record at the trial of the amount reimbursed to him for taxi fares and bus fares. Petitioner had no corporate record of bank charges made to the corporation at the trial. The corporation paid for checks imprinted with the corporate name and paid monthly bank charges for services of $3to $4 a month. ULTIMATE FINDINGS OF FACT 1. Petitioners, Harold A. Hobson, Jr. and Joan E. Hobson, have failed to substantiate any of the deductions for expenses for the year 1972 except to the extent allowed or conceded by respondent or agreed to by the parties at the trial. 2. Petitioner Harold A. Hobson, Jr. made personal loans in August 1972 to John Larusso in the total amount of $20,000, which loans constitute nonbusiness debts within the meaning of section 166(d). *482 Petitioner has failed to show that the $20,000 indebtedness of John Larusso to him became worthless in 1972. 3. Petitioner's pro rata portion of the loss of the Western Beef Cattle Fund partnership in which he was a limited partner exceeded petitioner's basis in that partnership by $1,385.22 in 1972. Petitioner did not increase his investment in the partnership in 1973. 4. Petitioner is entitled to deductions in excess of those conceded by respondent for the following items in the amounts indicated for the calendar year 1973: Telephone
$ 349.98
Office rent
300.00
Postage
36.88
Printing
120.80
Gifts to
customers
301.00
Subscriptions
100.00
Dues
51.00
Gasoline and oil
531.95
Medical
150.00
Interest
1,400.00
Contributions
10.00
5. The corporation, Harold A. Hobson, Jr. and Associates, Inc., is entitled to business expense deductions for the period August 1973 through December 1973 in addition to the amount conceded by respondent as follows: Telephone
$ 150.00
Postage
64.50
Supplies
135.80
Subscriptions
135.00
Legal and accounting
100.00
Bank charges
75.00
Promotion expenses
2,000.00
Travel expenses
1,413.25
Taxis and buses
100.00
Oil and gas
583.11
*483 6. Petitioner Harold A. Hobson, Jr. and Associates, Inc. has failed to show that it is entitled to a deduction of any amount for a pension plan. 7. Petitioners Harold A. Hobson,Jr. and Joan E. Hobson have failed to show that some portion of the deficiency in their income tax for 1973 was not due to negligence or intentional disregard of rules and regulations. 8. Harold A. Hobson, Jr. and Associates has failed to show that some portion of the deficiency in its income tax for 1973 was not due to negligence or intentional disregard of rules and regulations. OPINION All of the issues in this case are purely factual. Therefore, our ultimate findings of fact, to a large extent, dispose of the issues. Petitioner totally failed to show that he was entitled to any portion of the deduction of $1,600 for legal and accounting fees disallowed by respondent for the year 1972. Although petitioner testified at some length with respect to his expenditures for books and magazines and supplies in 1972 so that the record is clear that he is entitled to some deduction for these items, the amount of $41 disallowed by respondent was out of a claimed amount of $420 for books and magazines, *484 and the amount of $164 disallowed by respondent was out of a claimed deduction of $875 for supplies. Petitioner has totally failed to show with any degree of accuracy the amount he expended in 1972 for books and magazines and for supplies. Had respondent disallowed the amount in full, we would make some effort to estimate the amount of his expenditures from his oral testimony. However, nothing in that oral testimony indicates an expenditure by petitioner in excess of $379 for books and magazines and $711 for supplies in 1972, the amounts claimed as a deduction for such items on his 1972 return which were not disallowed by respondent in the notice of deficiency. The testimony with respect to petitioner's loan to Mr. Larusso clearly shows that the loan constituted a nonbusiness debt. Therefore, even if it had become worthless in 1972, any deduction for its worthlessness would have been limited by the provisions of section 166(d). However, the facts in this record show no basis for concluding that the debt became worthless in 1972. Although Mr. Larusso had not repaid the amount in 1972, he was not denying his liability for the amount. He had the same type of employment at the *485 end of 1972 and thereafter as he had when the loan to him was made. He had not made any statement of refusal to pay. In fact, the record shows that petitioner during the year 1973 continued to make efforts to collect the debt by calling Mr. Larusso. There is no showing in this record of any step, other than asking for repayment, that petitioner took to collect the debt either in 1972 or 1973, or any showing of Mr. Larusso's inability to repay the debt in either of those years. We therefore conclude that this nonbusiness debt did not become worthless in 1972 and respondent properly disallowed in full petitioner's claimed $20,000 deduction fora bad debt in 1972. Respondent initially disallowed all the partnership losses from the Western Beef Cattle Fund claimed by petitioner in 1972 and 1973. However, at the trial respondent conceded that petitioner's pro rata share of the partnership losses in 1972 was $4,385.22, and his pro rata share in 1973 was $265. It is respondent's contention that since petitioner's total investment as a limited partner in the partnership was $3,000, he properly disallowed $1,385.22 of petitioner's losses in 1972 and the $265 loss claimed in 1973. Section *486 704(d) provides as follows: SEC. m04. PARTNER'S DISTRIBUTIVE SHARE. * * *
(d) Limitation of Allowance of Losses.--A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership. The statute is clear that petitioner is not entitled to deduct the losses in excess of his basis in the partnership until the end of the year in which he repays such excess. The record here shows that petitioner did not repay the excess in either 1972 or 1973. The record also fails to show any liability on petitioner, a limited partner, for any partnership losses and petitioner at no point contended that his basis in the partnership exceeded the $3,000 he paid for his interest. Under these circumstances it is clear that petitioner is not entitled to deduct any amount *487 in excess of the $3,000 now conceded by respondent in 1972 and is entitled to no deduction in 1973 for a partnership loss from the partnership of Western Beef Cattle Fund. Long v. United States, an unreported case ( W.D. Tex. 1976, 38 AFTR 2d 5154, 76-2 USTC par. 9669), affd. per curiam 575 F.2d 79 (5th Cir. 1978). Gibson Products Co. v. United States, 460 F.Supp. 1109 (N.D. Tex. 1978). For the year 1973 respondent in his notice of deficiency disallowed all of petitioner's claimed business expense deductions and all of his claimed itemized deductions for medical expenses, taxes, interest and contributions. Out of the claimed business expense deductions of $16,206 respondent at the trial and on brief conceded that $12,982.82 was properly deductible by petitioner as business expenses. Respondent conceded that out of the $12,033 of claimed itemized deductions by petitioner for 1973 which were disallowed in the deficiency notice petitioner had properly shown that he was entitled to $10,210. On review of the record we have concluded that petitioner has shown other allowable deductions to the extent set forth in our ultimate findings *488 of fact. With respect to telephone expenses, respondent only conceded the amount shown in checks drawn by petitioner for bills presented that were not for personal telephone use for the months February through July. Petitioner testified that he did have a bill in approximately the same amount as for the other months for the month of January. He further testified that he spent $2 to $3 a day and always at least $5 a week making calls from a pay telephone when he was out of town. Considering the nature of petitioner's business and his testimony, we have concluded that petitioner is entitled to deduct the entire $1,400 claimed as telephone expenses for the year 1973. On the basis of petitioner's testimony that he paid $400 a month office rent to Sidney Novit beginning about mid-January of 1973 and ending in late July at the time his business was incorporated, we have concluded that he did pay $2,100 for rent even though he could produce checks verifying only $1,800 of the amount. Likewise, based on petitioner's testimony, we have concluded that he did spend the entire $140 claimed to be spent on postage. Petitioner testified to the number of times that he was required to mail *489 items when he was out of town. He bought stamps either at motels or at the post office. There is some documentation in the record showing an item shipped by petitioner by air express when he was out of town. On the basis of this testimony we have concluded that petitioner is entitled to the entire $140 deduction claimed in 1973 for postage. Likewise, on the basis of petitioner's testimony with respect to his printing costs, we have concluded that he is entitled to the entire $210 deduction claimed for such costs. The only item of gifts to customers substantiated by petitioner for 1973 was $301 paid for 492 tie tacks bearing the letters IDEAL which petitioner gave to his customers. These tie tacks cost a little over 50 cents apiece and bore the initials of petitioner's sales offerings. In our view petitioner has shown this $301 to be deductible in 1973 as a promotional expense rather than a gift within the meaning of section 274(d). See section 274-3(b) (2), Income Tax Regulations. We therefore hold that $301 of the amount claimed by petitioner in 1973 to be deductible as gifts to customers is properly deductible. Petitioner claimed a deduction of $210 for costs of subscriptions *490 and respondent conceded $70.34 based upon documentary evidence. On the basis of petitioner's testimony with respect to his purchases of magazines from newsstands when he was out of town for use in his business, we have concluded that petitioner has substantiated an additional $100 of deductions for subscriptions. Petitioner has failed to substantiate his claimed deduction for legal and accounting fees in 1973 except to the extent of the $250 conceded by respondent, or for insurance payments which he made personally in any amount in 1973. In fact the testimony tends to show that the business insurance items were all paid in August after the incorporation of his business and were paid by the corporation. The one item of dues which respondent conceded was based on a check presented by petitioner. Petitioner, however, testified that he did belong to the LaSalle Street Barn Club and that the dues were approximately $50 a year and he knew that he paid those dues in 1973. On the basis of this testimony we have allowed petitioner the extra $51 of dues which he claimed in 1973. Petitioner produced receipts and checks to show payments for oil and gas of $531.95. Respondent refused to *491 allow any deduction for expenditure of oil and gas by petitioner in 1973 arguing that petitioner had not shown that the gasoline purchases were not for personal use. However, the record clearly shows that petitioner was almost continuously on the road and drove to many of the places that he visited. Respondent conceded the deduction for auto lease to the extent of $135 a month. The record is clear that the automobile leased by petitioner on a monthly basis for $135 was for business use only. Respondent has also recognized that petitioner used the Apollo motor home in 1973 for business purposes. Petitioner testified unequivocally that all of the gasoline which he paid for by check and with his American Express card was for business purposes. It was his testimony that he spent much more than $531.95 but was unable to find the receipts. On the basis of the record we hold that petitioner is entitled to deduct $531.95 for gas and oil payments in 1973. On the basis of petitioner's testimony that he had a major medical policy for which he paid over $300 in 1973, we hold that he is entitled to deduct $150 hospital insurance payment in 1973 as medical expense. On the basis of his testimony *492 of gifts to the Boy Scouts, we have concluded that he is entitled to an additional charitable contribution deduction of $10. Petitioner could name no organization to which he made any other contributions by cash in 1973. The two items of interest claimed to be deductible by petitioner and not conceded by respondent to any extent were the payments to the First National Bank and TrustCompany of Barrington totaling $1,200 and the payments totaling $200 with respect to credit cards. Petitioner placed in evidence the installment note he had with the First National Bank and Trust Company of Barrington dated August 5, 1972with respect to the purchase of the Apollo motor home. This note shows that the total finance charge was $2,565 and that the annual percentage rate of interest on the face amount of the note of $15,390 was 9.24 percent. Petitioner argued that since this note was a discounted note the interest actually amounted to around 15 percent. Petitioner also placed in evidence one of the checks drawn in payment of this note and testified he made all the required payments through July of 1973. We have not attempted from the note to figure exactly the amount of interest paid *493 by petitioner for the months of January through July 1973, on the installment note covering the Apollo motor home, but from this note have estimated that the amount would be at least $800. Apparently the corporation made the payments on this note after July of 1973. Petitioner could not find the installment contract on his wife's car but did find a check showing a monthly payment on the car of $113.60. He testified that he had an installment note for the car similar to the one he located with respect to the motor home and that he made the monthly payments on that note during the entire year 1973. We have even less basis for figuring precisely the amount paid as interest on the note on the automobile in 1973 but from all the evidence in the record conclude that payments for the 12 months of 1973 of interest on this note were at least $400. On this basis we have concluded that petitioner was entitled to the deduction claimed of $1,200 for interest paid to the First National Bank and Trust Company of Barrington during 1973. Petitioner stated that the $200 interest paid with respect to credit cards was composed of $11.77 he paid monthly on his Bankamericard and the interest charges *494 paid on department store revolving accounts. While the great majority of the charge slips in this record are American Express, petitioner did place in evidence a number of charge slips for charges on a Bankamericard account. He did not have the statements available to show the interest charges but, considering the amounts charged and petitioner's testimony, we conclude that he did in fact pay interest of $200 on his various credit card charge accounts in 1973 and therefore that he is entitled to the $200 deduction claimed. The final problem here is the amount of deductions to which the corporate petitioner is entitled. Respondent in the notice of deficiency disallowed the entire claimed deductions for business expenses of the corporate petitioner totaling $41,007. At the trial respondent conceded that a number of these deductions were proper. Our findings effectively dispose of the other items. In our view petitioner totally failed to show that the corporation actually paid him any rent for use of a room in his home and therefore we have found that the corporation is entitled to no deduction for rent in excess of the amount conceded by respondent.
With respect to telephone *495 expense, we have determined that the corporation did pay for calls from pay stations made by petitioner. On the basis of petitioner's testimony we have estimated the amount of deduction to which the corporate petitioner is entitled for such calls made by petitioner in connection with the corporate business to be $150 and therefore hold that the corporation is entitled to a $150 deduction for telephone expenses in addition to the amount conceded by respondent. We have also found the testimony that the corporation is entitled to the total deductions claimed for postage and supplies, which is $64.50 for postage and $135.80 for supplies, in addition to the amounts conceded by respondent. Respondent conceded only $15 of the amount claimed by the corporation as a deduction for subscriptions. On the basis of the testimony in the record, we conclude that the entire $150 claimed by the corporation as a deduction for subscriptions is properly deductible. We therefore determine that the corporation is entitled to $135 more deduction for subscriptions than conceded by respondent. Petitioner's testimony was that the payments made by the corporation to Mel Keel and Sidney Novit were for *496 legal and accounting expenses in connection with the organization of the corporation. This of course is a capital expenditure of the corporation and not properly deductible. However, the record indicates that the $100 payment to John Nobel and Associateswas in connection with keeping the corporate books and this item is deductible. We have therefore held that the corporation is entitled to a $100 deduction for legal and accounting expenses. The testimony also shows that the corporation did have bank charges and we have concluded on the basis of the record as a whole that it is entitled to the claimed $75deduction for bank charges. We have discussed at some length in our findings the $2,000 paid by the corporation for a contest among salesmen of one of the brokers who was one of its best sources of obtaining sales. Although petitioner referred to the insistence by the client that this payment be made as "blackmail," the record shows that this amount was a legitimate promotional expense similar to some more happily made by petitioner on behalf of the corporation. Petitioner would have much preferred spending this $2,000 of corporate funds for the expenses of a meeting for the *497 salesmen of his client. This however does not cause the $2,000 not to be a promotional expense. On the basis of this record we hold that the corporation did pay the $2,000 as a promotional expense and that amount is an ordinary and necessary business expense of the corporation. The most difficult item to determine from this record is the amount of travel expense deduction to which the corporation is entitled. This record contains numerous receipts and a number of petitioner's travel reports with respect to travel done by him for the corporation. In our view the corporation can be allowed deductions for travel expenses only to the extent that they have been substantiated in accordance with the provisions of section 274(d) and the regulations issued pursuant thereto. Considering this criteria we have gone over the documents placed in evidence with respect to the travel expense deduction to which the corporate petitioner is entitled. It would unduly lengthen this opinion to discuss each item individually. Therefore, without detailed discussion, we conclude that the corporation has shown *498 that it had total travel expenses properly substantiated under section 274(d) of $2,402 which is $1,413.25 in excess of the amount conceded by respondent. On the basis of the testimony in the record we have concluded that expenditures on behalf of the corporation for taxis and bus fares totaled at least $100 and therefore hold that the corporation is entitled to deduct $100 as a business expense for such expenditures.
Petitioner placed in evidence receipts for gasoline charged to the corporation during the period August through December 1973 totaling $583.11. Respondent conceded no amount to be properly deductible by the corporation for gas and oil, arguing that petitioner had not shown that some amount was not a personal expense. Petitioner testified that the entire charges of gas and oil to the corporation were for business use. Here, as in the case of petitioner's individual business expenses, respondent recognized that petitioner drove a car leased by the corporation exclusively for business purposes. Considering this evidence and petitioner's testimony, we hold that the corporation is entitled to deduct $583.11 for gas and oil in 1973. We have allowed no amount of the *499 claimed deduction by the corporation for gifts, tips and entertainment. In our view there has been no showing that any amount of tips was expended on behalf of the corporation, aside from those we have allowed as part of travel expenses. While some receipts were received in evidence with respect to purchases which petitioner testified were gifts, and dinners and other items which petitioner testified were entertainment, there has been no showing made in the record of the numerous facts required to be shown under section 274(d) and the regulations issued pursuant thereto in order for such items as gifts and entertainment to be deductible. We therefore conclude that the corporation is entitled to no deduction for these two items because they have not been properly substantiated in accordance with the requirements of section 274(d). In our view the corporation has failed to show any amount of auto repair or motor home repair and maintenance in excess of that allowed by respondent. There were some expenditures shown with respect to repair of the motor home because of damage to it when it was being used by a client. However, it appears that the motor home was in an accident while *500 being driven by the client and there has been no showing made that the repairs resulting from such an accident were not covered by insurance. The record shows that the corporation carried insurance on the motor home and it would appear that if the repairs to the motor home were necessitated by an accident, those repairs would be compensated for by insurance. There is no showing in this record that the entire amount of these repairs to the motor home were not reimbursed to the corporation by insurance. We have therefore concluded that the corporate petitioner has failed to show that it is entitled to any deduction for motor home repairs and maintenance in excess of that allowed by respondent. The corporate petitioner has made no showing of expenditures for miscellaneous expenses in excess of the amount conceded by respondent and the same is true with respect to parking and tolls. The final item is the claimed deduction of the corporation of $5,000 for a pension plan. At the trial petitioner stated that he did have documentation as to the corporation's pension plan but did not have it with him. The record was held open for 30 days for submission of the corporation's pension *501 plan and documentation of any payment made by the corporation to that plan. No such additional evidence was forthcoming. Therefore, the corporation has failed to establish that it is entitled to the $5,000 deduction claimed for the pension plan. Petitioner was afforded an opportunity to file a brief discussing his contentions with respect to the various deductions which respondent had not conceded in his individual case and in the corporate case. Instead of filing such a brief, petitioner filed a document headed "Notice of Intent Not to File Brief," giving as the reasons therefor that-- 1. Petitioners have proved with documentation and logical conclusions that proper deductions were made for the years in question. 2. That Petitioners have to the best of their abilities and knowledge agreed to individual self-assessment and voluntary compliance which is the essence of our tax system. As heretofore pointed out respondent at the trial and on brief made certain concessions based on the various documents offered by petitioner at the trial. Respondent's argument generally with respect to items not conceded was that petitioner had failed to substantiate those items, or in *502 the case of items that would fall under section 274(d) had failed to substantiate the items within the requirements of that section. We have considered each of the various items of deduction claimed in light of all the evidence both documentary and oral in reaching our conclusions herein. Petitioner and the corporate petitioner has each totally failed to show error by respondent in his determination of additions to tax for 1972 under section 6653(a). In fact the record affirmatively shows a lack of properly kept books by both. Decision will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Harold A. Hobson, Jr. and Associates, Inc., docket No.3086-77; and Harold A. Hobson, Jr. and Joan E. Hobson, docket No. 3087-77.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years here in issue.↩
3. In the facts we will set forth the various claimed deductions, the amounts conceded by respondent and the amounts still in dispute under each category of claimed deductions.↩
*. The parties at the trial agreed that the depreciation computation as shown in the statutory notice of deficiency was correct.↩
*. Respondent concedes a deductible amount in excess of that claimed by petitioner. ↩
**. Petitioner concedes the $10.50 remaining.↩
*. Respondent concedes a deductible amount in excess of that claimed by petitioner. ↩
**. Petitioner concedes the $85 difference.↩